IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: JENNIFER M. GLAUSER, | : | CIVIL ACTION |
| Debtor. | : | |
| | : | |
| | : | NO.  07-CV-1863-LDD |
| | : | |

MEMORANDUM

_____AND NOW, this 8th day of July 2008, upon consideration of the factual record and the parties' submissions, and for the reasons detailed below, it is hereby ORDERED that the April 3, 2007 Order issued by the Honorable Diane Weiss Sigmund, Chief United States Bankruptcy Judge for the Eastern District of Pennsylvania, is AFFIRMED.

I.     FACTS AND PROCEDURAL HISTORY

Presently before the Court is an appeal from the April 3, 2007 Order issued by the Honorable Diane Weiss Sigmund, Chief United States Bankruptcy Judge.  Plaintiffs, husband and wife, are co-owners of a property located at 14 Bark Hollow Lane in Horsham, Pennsylvania, which they purchased in December 2001.  To finance their initial purchase of the property, plaintiffs obtained a mortgage loan from Wells Fargo Mortgage Resources ("Wells Fargo"), as well as title insurance from Fidelity National Title Insurance Company ("the Fidelity policy").  Several years later in January 2004, plaintiffs refinanced their Wells Fargo mortgage with a loan from defendant Ameriquest Mortgage Company ("Ameriquest")[1], a transaction which involved the obtainment of new title insurance procured through Express Financial Services, Inc. ("the Express policy").

---

[1] Plaintiffs' Ameriquest loan was later sold and assigned to defendant Deutsche Bank, as trustee for Ameriquest.

It is plaintiffs' subsequent purchase of the Express policy which lies at the center of this dispute. According to the record, plaintiffs were charged $1,178.75 for insurance, representing the "basic rate" according to the Manual of the Title Insurance Rating Bureau of Pennsylvania ("TIRBOP Manual"). (See Ameriquest HUD-1.) The parties agree that this charge was not disclosed as part of the "finance charge" in the federal Truth-in-Lending Act ("TILA") Disclosure Statement provided to plaintiffs at the loan closing. After making only two payments on the Ameriquest loan, plaintiffs defaulted, and a foreclosure action was instituted against them. (See Trial Tr. at 28.) Plaintiff Jennifer Glauser thereafter filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Pennsylvania, and commenced this adversary proceeding asserting a right to rescind the loan. There, plaintiffs argued before Chief Judge Sigmund that they were overcharged for title insurance, in that their procurement of the previous 2001 Fidelity policy entitled them to the discounted "refinance rate" of $848.70.[2] (See 2003 TIRBOP Manual § 5.6, Appellants' Br. at 4.)

Though at first glance the difference between the $1,178.75 "basic rate" and $848.70 "refinance rate" for title insurance may appear small, in fact the disparity is quite significant given defendants' obligations — under TILA and its accompanying Regulation Z — to accurately disclose a loan's finance charges. See 15 U.S.C. §§ 1602(u), 1638(a); 12 C.F.R. §§ 226.17, 226.18. Because Regulation Z permits only title insurance fees which are "reasonable" to be excluded from a real estate loan's finance charge calculation, 12 C.F.R. § 226.4(c)(7)(i), and because the parties agreed

---

[2]Section 5.6 of the 2003 TIRBOP Manual, which governs this transaction, states as follows: "When a refinance or substitution loan is made within 3 years from the date of closing of a previously insured mortgage or fee interest and the premises to be insured are identical to or part of the real property previously insured and there has been no change in the fee simple ownership, the [title insurance] Charge shall be 80% of the reissue rate." Section 5.50 of the TIRBOP Manual further defines the "reissue rate" as 90% of the basic rate.

that the TIRBOP Manual effectively establishes the "reasonable" rates for title insurance, plaintiffs contended that the alleged overcharge was unreasonable and should therefore have been disclosed. As it was not, they argued that they had a right to rescind the Ameriquest transaction in its entirety, pursuant to 15 U.S.C. §§ 1635(f), 1641(c).

The Bankruptcy Court disagreed.  Following a trial on the merits, Chief Judge Sigmund issued an order on April 3, 2007 ruling for defendants, on the grounds that plaintiffs failed to show that Ameriquest either "knew or should have known" about the prior Fidelity policy and plaintiffs' eligibility for the discounted "refinance rate."  See Glauser v. Deutsche Bank Nat'l Trust Co. (In re Glauser), 365 B.R. 531 (Bankr. E.D. Pa. 2007).  This appeal followed.

II.     LEGAL STANDARD

In reviewing a bankruptcy court's recommended findings, the district court applies "a clearly erroneous standard to findings of fact . . . [and] a de novo standard of review to questions of law." Berkery v. Comm'r, Internal Revenue Serv., 192 B.R. 835, 837 (E.D. Pa.1996) (citing Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 102 (3d Cir. 1981)).  With respect to the "clearly erroneous" standard, the Supreme Court has held that a finding of fact is "clearly erroneous" when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  Anderson v. Bessemer City, 470 U.S. 564, 573 (1985) (internal citations omitted).  De novo review, on the other hand, requires the district court to make its own legal conclusions, "without deferential regard to those made by the bankruptcy court."  Fleet Consumer Discount Co. v. Graves (In re Graves), 156 B.R. 949, 954 (E.D. Pa.1993), aff'd, 33 F.3d 242 (3d Cir. 1994).

III.    DISCUSSION

Upon review, this Court agrees with Chief Judge Sigmund's determination that plaintiffs failed to sustain the burden of proving their claims. Courts in the Third Circuit have held, almost without exception, that borrowers seeking to obtain discounted title insurance must demonstrate that the lender either knew, or should have known, that the borrower qualified for a discounted rate at the time of the loan transaction. See, e.g., Fields v. Option One Mortg. Corp. (In re Fields), 2006 U.S. Dist. LEXIS 52934, *11 (E.D. Pa. July 31, 2006), aff'd, 2008 U.S. App. LEXIS 13595 (3d Cir. June 27, 2008) (concluding that lender was not required to give borrower the "refinance rate" where she failed to produce evidence of her prior policy at closing); Ricciardi v. Ameriquest Mortg. Co., 164 Fed. Appx. 221, 226 (3d Cir. 2006) ("as Ricciardi presented no evidence prior to or at the loan closing that his previous mortgage was insured, Ameriquest appropriately charged him the default title insurance rate"); Madera v. Ameriquest Mortg. Co. (In re Madera), 363 B.R. 718, 728 (Bankr. E.D. Pa. 2007), aff'd 2008 U.S. Dist. LEXIS 25864 (E.D. Pa. Mar. 27, 2008) ("if a borrower contends that a lender failed to obtain the lowest title insurance rate permitted by law, she has an affirmative burden to demonstrate that the lender knew or should have known of the facts justifying the lower rate") (internal citations omitted); Escher v. Decision One Mortg. Co., LLC (In re Escher), 369 B.R. 862, 877 (Bankr. E.D. Pa. 2007) (same); Davis v. Deutsche Bank Nat'l Trust Co., 2007 U.S. Dist. LEXIS 83307, *18 n.6 (E.D. Pa. 2007) (same). This Court found likewise in Jones v. Aames Funding Corp., where we granted summary judgment as to the plaintiff borrower's title insurance-based TILA claim on the basis that he provided no proof of his eligibility for the "refinance rate" at closing. 2006 U.S. Dist. LEXIS 11119, *20 (E.D. Pa. Mar. 8, 2006).[3]

---

[3]The only case imposing some responsibility on the lender to actively discover a borrower's eligibility for discounted title insurance is the readily-distinguishable Strong v. Option One Mortgage Corp. (In re Strong), 356 B.R. 121 (Bank. E.D. Pa. 2004), aff'd 2005 U.S. Dist. LEXIS 12136 (E.D.
(continued...)

In light of this authority, we cannot find that the Bankruptcy Court erred in denying plaintiff's claim. Chief Judge Sigmund found that plaintiffs failed to provide any documentation whatsoever evidencing the Fidelity policy, and Mark Glauser admitted that he never informed defendants of the prior insurance policy at or before the loan closing. (Tr. at 48.) There was thus nothing in the record to show that either Ameriquest or Express[4] knew or should have known that plaintiffs had purchased title insurance within the requisite three-year period. Chief Judge Sigmund also found that plaintiffs failed to establish, even at trial, that they met the second eligibility requirement for the "refinance rate" — that the premises was "identical to or part of the real property previously insured." 2003 TIRBOP Manual § 5.6.[5] Upon careful review of the trial transcripts and exhibits, this Court fully agrees with Chief Judge Sigmund's factual findings. Moreover, plaintiffs' own expert witness testified that such complete lack of documentation would not justify application of the discounted rate:

---

[3](...continued)
Pa. 2005). There, Judge Fox of the United States Bankruptcy Court placed the burden as to existing insurance on the lender, but only after he had determined that: 1) the lender had obtained the HUD-1 Form reflecting the borrower's purchase of prior insurance; and 2) the title agent had expressly informed the lender that the borrower could obtain the discounted rate by providing certain documentation. Id. at 159. Neither of those facts are present in this case. More importantly, two years later Judge Fox explicitly retreated from his earlier position in Fields v. Option One Mortgage Corp. (In re Fields), Adv. No. 04-005, slip op., concluding that, ultimately, "a plaintiff bears the burden of proving her claims" when seeking discounted title insurance. Id. at 29. This decision was later affirmed by the district court, as well as most recently the Third Circuit Court of Appeals. See 2006 U.S. Dist. LEXIS 52934, *11 (E.D. Pa. July 31, 2006), aff'd, 2008 U.S. App. LEXIS 13595 (3d Cir. June 27, 2008).

[4]While Express is not itself a defendant to this action, plaintiffs appear to argue that any information in Express's possession could, and should, have been imputed to Ameriquest. We need not address the legality of this contention here, however.

[5]This point, which Chief Judge Sigmund found to be dispositive, was also the basis for the Third Circuit Court of Appeals' recent decision in In re Fields, where the parties stipulated as to the existence of prior insurance but not to the fact that the premises were identical. See 2008 U.S. App. LEXIS at *6-7.

> Q: [I]f the loan at issue — the refinanced loan — is made within three years from when the home is purchased, would granting the lower rate be appropriate?
>
> A: Perhaps, I can't give you a definite yes or no.
>
> Q: What would be the conditions that you would have to know to be able to answer that?
>
> A: In order to find my own comfort level, I would want either the policy . . . or a copy of the HUD statement or the other proofs found acceptable with the adoption of Rule 2.8 under the '05 policy,[6] but that wouldn't have applied in this case.
> *So, in this set of facts, I'd have to have a policy or I'd have to have a HUD.*
> *I'd be on the fence, if I just knew that there was a loan, but didn't know anything about it. That's the best I can do.*

(Tr. at 109-110) (emphasis added). We therefore agree with the Bankruptcy Court's disposition of the case.

This is not to say that we are completely unswayed by the argument set forth in the Philadelphia Unemployment Project ("PUP")'s *amicus* brief, namely, that there is something troubling about a framework which places the full onus on the borrower — who is presumably the least knowledgeable about title insurance — to seek out a discount which he may or may not know he is entitled to. See Brief for PUP, as *Amici Curiae*. Given the way most mortgage transactions are conducted today, it is impracticable to expect that the average home-buyer possess sufficient legal sophistication such that he would reasonably inquire into discount eligibility requirements. Furthermore, we are not unmindful that it is typically the title insurers and their agents, not the lenders, who set the charges for insurance, though they have thus far been fortuitously left out of the

---

[6]Section 2.8, which was added to the revised 2005 TIRBOP Manual, provides that § 5.6 setting forth the discounted "refinance rate" makes such reduced rates applicable "when evidence of previous insurance is provided within a specified period of time."

burden-allocation equation due to the nature of TILA's remedial structure.  Nevertheless, since it would have no bearing on the outcome of this case, this is not the occasion for us to re-interpret the language crafted by the state's Insurance Commission, particularly in light of its 2005 amendments to § 5.6 of the TIRBOP Manual.[7]  The Bankruptcy Court's Order should therefore be affirmed.

IV.     CONCLUSION

For the reasons stated above, the April 3, 2007 Order issued by the Honorable Diane Weiss Sigmund, Chief United States Bankruptcy Judge for the Eastern District of Pennsylvania, is AFFIRMED.  An appropriate order follows.

BY THE COURT:

/S/LEGROME D. DAVIS

Legrome D. Davis, J.

---

[7]Section 5.6 of the revised 2005 TIRBOP Manual now includes additional language referencing Section 2.8's evidentiary requirements.  See supra note 5.